UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:14CV-P68-JHM

STEVEN LAMONT RICHARD                                        PLAINTIFF

v.

PAULINE MAYS                                                       DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment by Defendant Pauline Mays, on grounds that Plaintiff Steven Lamont Richard, *pro se*, failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) (DN 25). Plaintiff filed a response to the motion for summary judgment (DN 30). He also filed his own motion for summary judgment (DN 33), which the Court will construe as both a motion and a response to Defendant's motion for summary judgment. Upon review, for the following reasons, the Court will grant Defendant's motion and deny Plaintiff's motion.

### I.

On initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claim against Defendant Pauline Mays in her individual capacity to proceed based on his allegations that, while he was an inmate at Daviess County Detention Center (DCDC), Defendant Mays, a DCDC deputy, made sexual contact with him after an ultrasound was performed on his testicles. More specifically, in the complaint, Plaintiff alleged that on May 19, 2014, he was seen by two nurses for an ultrasound of his testicles to examine a hernia. The facts alleged by Plaintiff are as follows:

> [The nurse] told me to get undress and put a towel over top of me. She said we will leave out of the room so u can get undress. So the nurses left out of the room. So in the mean while I am getting undress taken of my jumpsuit and boxer. The ofc female Ms. Mays is still (she shut the door[)] in the room with me. We

> are talking to each other while I am naked. I lay down on the nurse bench with a towel wrap around me. Ms. Mays called the nurses back in the room with us. So one of the nurse did the ultrasound on me she had to use gel to do the test. It took around 15 min. So after she got finish with the ultrasound. She (Nurse) said we are going to leave out of the room, so u can wipe clean your self off from gel. So in the mean while I stand up off the nurse bench to clean myself off. Soon as I got finish I layed the towel down on the bench. Mrs. OFC Mays told me to put the towel at the door. So I walked to the door naked in the direction of Ms. Mays. Doing what she ask me to do. So when I get to the door Mrs. Mays tell me to come here. She grips my penis she strokes it and put it in here mouth. I nutted instant. I put my clothes back on. She ask me did I want to wash my hands. I wash my hands she dried them with the paper towels. She called the nurses bk in the room. Mrs. Mays walk me back to the cell. 30 min later Ms. Mays came back to my cell. She told me to put some clothes on. (Tease me) I put in a grievance about the matter. (Same day) I felt token advantage of. The major at the jail responded to my grievance a few days later. I explain to him I could not really go into full details about the matter until I talk to my lawyer I hired. The jail ship me the next follow week (5-27-14 Hickman Jail) . . .

Defendant argues that she is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.[1] Defendant attaches the affidavit of Bill Billings, a Major at DCDC. Billings avers that there was a grievance procedure at DCDC at all times relevant to the complaint. He states that there is also an "inmates rights designation" at DCDC, which "sets out the grievance process to be followed by an inmate at the [DCDC] who desires to file a grievance regarding his or her conditions of confinement." He attaches both the grievance process and the inmate rights designation as exhibits to the affidavit. Billings states that there are several levels contained in the DCDC grievance process and that the final step is an appeal filed with the Jailer at the DCDC. Billings avers, "In order to exhaust all of the administrative grievance remedies available to an inmate at the [DCDC], the inmate must appeal to Jailer Osborne for a decision by the final authority within the institution."

---

[1] Defendant also argues that Plaintiff abandoned his claim, that Plaintiff cannot recover injunctive relief because he is no longer incarcerated at DCDC, and that Defendant is entitled to qualified immunity. Since the Court will grant summary judgment on the exhaustion issue, it will not address the other grounds raised.

Billings further avers that Plaintiff filed grievances while housed at DCDC, including a grievance related to the May 19, 2014, medical unit visit, which is attached to his affidavit. However, Billings states, Plaintiff "never filed an appeal directly to Jailer Osborne and therefore did not fully exhaust the grievance procedures available to him with regard to his claims set out in his Complaint." Billings further avers, "Following the filing of the grievance by Mr. Richard I had a conversation with him regarding his allegations. During that conversation, he did not allege that any sexual contact occurred between himself and Deputy Mays. The allegations in the Complaint are not the same as the description provided to me during our conversation." Billings avers that an investigation was conducted regarding the allegations in Plaintiff's grievance by William Blincoe, the "Prison Rape Elimination Act coordinator" for the DCDC. Billings states that as part of the investigation Blincoe interviewed Plaintiff and that Billings was present for the interview but did not ask questions. He states that Blincoe prepared a summary of the interview which was included in his Sexual Offense Allegation Reporting form and that the report "provides an accurate summary of the interview conducted with Mr. Richard regarding his grievance and his allegations." The report is attached to the affidavit. Billings states that Plaintiff "did not allege during the interview conducted by Mr. Blincoe that he had been touched in any inappropriate way, sexually or otherwise, by Deputy Mays at any time."

The DCDC grievance procedures attached to Billings' affidavit state as follows:

a. Inmates wishing to file a grievance must use the following procedure:
    1. Attempt to solve the problem through verbal communication with the person believed to be responsible for the condition.
    2. If that person does not solve the issue, then the grievance process may be initiated.
    3. Inmates shall be able to file their grievances in a secure and confidential manner and without a threat of retaliation.
    4. All inmates shall have equal access to the grievance system.
    5. Grievance process shall be readily available to all inmates.

6. Send your grievance to "Grievance" on kiosk within 48 hours of the incident following the on screen instructions of the kiosk.
    a. There is no time limit to submitting a grievance regarding an allegation of sexual abuse.
    b. Nothing in this section shall restrict the DCDC's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.
7. The grievance officer shall have ten business days from the date sent to conduct an investigation and respond to the grievance.
8. In any case where the grievance officer does not respond to a filed grievance within ten days, the grievance is deemed denied.
9. In cases where the inmate is not satisfied with the initial response to the grievance, the inmate may appeal his/her grievance to the jailer. This appeal must occur within 48 hours of receipt by the inmate of the initial response.
10. The jailer/designee shall have ten business days from the date sent on the Grievance Appeal Form to conduct an investigation and respond to the appeal.
11. In any case where there is no response to the appeal within ten days, the appeal is deemed denied.
12. If issue is about a rule or policy, the response shall be returned to the inmate as "Not a grievable issue."
13. Grievance Procedures may be utilized to report / address incidents of sexual abuse.
    a. Grievances regarding allegations of sexual abuse will not be routed to or accessible to a staff member who is the subject of the complaint.
    b. Inmates are not required to use the Grievance process or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.
    c. See Inmate Handbook, Section 60 "Sexual Assault, Sexual Abuse, Rape or Sexual Misconduct", item "h," "Reporting an Incident" – for various reporting options for incidents of sexual abuse.
14. The DCDC may discipline an inmate for reporting, communicating or filing a grievance related to an alleged incident of sexual abuse where the DCDC demonstrates that the inmate filed the grievance in bad faith.
15. Although a grievance may be used to report an incident of sexual abuse/assault, inmates are not required to use the Grievance Process for reports of this nature (See Operations Manual, Section 133, Prison Rape Elimination Act (PREA), for details in regard to various reporting methods that can be used for incidents of sexual abuse/assault and sexual misconduct).

The Inmate Handbook section regarding grievance procedure rights is also attached to Billings' affidavit and provides as follows:

> 5. Grievance Procedure Rights
>    a. Inmates wishing to file a grievance must use the following procedure:
>       1. Attempt to solve the problem through verbal communication with the person believed to be responsible for the condition.
>       2. If that person does not solve the issue, then a Grievance Form may be requested.
>       3. Complete and submit a Grievance Form to the captain within five calendar days of the incident.
>       4. The captain shall have ten business days from the date on the Grievance Form to conduct an investigation and respond to the grievance.
>       5. The response shall be in writing on the bottom of the submitted Grievance Form.
>       6. A copy of the Grievance Form with the response on the bottom shall be given to the inmate and a copy shall be retained by the captain.
>       7. If the inmate is not satisfied with the captain's decision or if he/she does not receive a response within ten business days from the date on the Grievance Form, the inmate may appeal to the jailer within five calendar days.
>       8. An inmate Grievance Appeal Form shall be provided upon request.
>       9. The jailer/designee shall have ten business days from the date on the Grievance Appeal Form to conduct an investigation and respond to the appeal.
>       10. The response shall be in written form on the bottom of the submitted Grievance Appeal Form.
>       11. A copy of the Grievance Appeal Form with the response on the bottom shall be given to the inmate and a copy shall be retained by the jailer.

Plaintiff's grievance dated May 19, 2014, is also attached to Billings' affidavit and states as follows:

> Today I was seen by the nurse Amy and my situation required me stripping. During this process I feel as though my privacy was violated. I was given instructions by the two nurses present to remove all clothing due to the fact I was to recieve an ultrasound on my testicles examming a hernia I have. Mind you upon instructing me to strip both nurses being femaile remove theirself from the room respecting my privacy. Contrary to the two female nurses leaving a female deputy did not leaving only me and this deputy in this room with the door open

> until she shut it.  Instantly upon her shutting the door I felt uncomfortable and out of place.  Once I removed my clothes I immediately felt shame embarrassed and prideless due to the fact I had been exposed fulling to this female . . . deputy who the entire time not only provided instructions on how to strip but also watched as I proceeded in stripping and wrapping a towel around me.  Afterwards upon returning to my cell not an hour later she comes . . . to my cell singles me out of about seven other inmates unproperly dressed inmates and tells me to put some clothes besides the fact that I had state issued short on and a tshirt.  I feel as though not only has my privacy rights been violated by this jail but also I have a personal conflict with Deputy Mays being that everytime I see her my pride is crushed because all I can think is she is picturing me naked.  This incident has also caused family turmoil because after explaining the situation in a letter to my fianace she has mixed emotions as to whether the jail was wrong or does me and this deputy have some sort of fling due to the fact she insisted on watching me strip alone and I allowed it.  What is to be done in this situation?  Im totally lost emotionally drained and in no way want to see this deputy due to this conflict.  In no way am I trying to stir up conflict although the situation allows conflict and my rights allow me to grieve it.

The response to the grievance was: "You will be interviewed regarding this allegation."

The Sexual Offense Allegation Reporting Form completed by Blincoe, also attached to Billings' affidavit, contains the following summary of the allegations and interview of Plaintiff:

> Inmate Richards was in Medical on May 19, 2014 for a scheduled ultrasound procedure.  The nurse and ultrasound nurse provided inmate Richards with instructions to prepare for the examination.  They left the examination room while Richards completed the instructions (undressed and placed a towel around his midsection).  Deputy Pauline Mays remained in the examination room as the security detail requires.  Inmate Richards advised that Deputy Mays' persence made him very uncomfortable.  Major Billings and Bill Blincoe interviewed inmate Richards.  Richards was asked to recount the incident.  The following was taken from the interview documentation:
> Note: In grievance #46059, Richards stated, "After explaining the situation in a letter to my fiancé, she has mixed emotions . . ."
> Richard's appointment in Medical and the alleged incident took place on Monday, May 19, 2014.  Richards submitted grievance #46059 at 15:09 on May 19, 2014.  It's physically impossible to send a letter on a Monday (5/19) and the recipient receive the letter the same day.  Mail delivery, at best would be several days.
>
> Interview:
> Blincoe:  Asked Richard to explain/review the incident that he had described in #46059
> Richards:  Explained what had happened – consistent with #46059.  Richards added the following which was not contained in the grievance:

- The female deputy closed the door
- The female deputy invited Richards to wash his hands after cleaning the ultrasound solution from his body
- The female deputy asked Richards to dispose the cleaning cloths in the trash container

Blincoe:  (following Richards' account of the incident)

- Advised Richards that nursing staff confirmed that the door was not fully closed – just pushed ajar
- Asked Richards – Did it occur to you that the deputy pushed the door ajar as a courtesy to you to help provide more privacy for you – given that the Medical Unit hallway is a high traffic area.  Richards did not challenge the "ajar" confirmation and acknowledged that the deputy may have pushed to door as a courtesy to him
- Advised Richards:  You are aware that as an inmate – supervision is appropriate and required at all times – an inmate would never be left unsupervised in a medical examination room (with medical equipment easily accessible).
- Asked Richards:  "Did the deputy say anything inappropriate?"  Richards:  "No"
- Asked Richards:  "Did the deputy do anything inappropriate?"  Richards:  "No"
- Richards went on to say, "I've been locked up a long time.  She (the deputy) didn't have to say or do anything – it's like if I'm in a club and watching a stripper – I just get all worked up.  Having been locked up so long and a female deputy is in the room alone with me – I get worked up."
- I asked Richards if he had anything else that he would like to share or discuss in regard to this matter.
- Richards:  "No"

Richards was offered an opportunity to meet with a mental health counselor to discuss this matter further.

The form shows that the sexual offense was determined to be "Unfounded – Determined not to have happened."  Where the form states, "If the incident was unfounded, list actions taken against claimant," the response is:  "Inmate Richards admitted that he 'got himself worked up because he was in the examination room with the deputy'.  Richards was not disciplined."

In response to the motion for summary judgment, Plaintiff does not dispute that he did not disclose the alleged sexual contact in his grievance or in the interview with Billings and Blincoe.  He states, "At the time of interview my attorney was not presence I told Major Billings

and William Bilncoe (upon interview first thing) I could not go into full details of grievance. I was nervous, scared, shame, embarrassment. I didn't know what was going to happen to me." He also states, "I tried to make my self clear as possible when interviewed with Major Billings/ William Bilncoe. I was nervous but still had a clear mind." Plaintiff also does not dispute Defendant's assertion that he did not appeal the grievance. He states, "I was transfered to Hickman County Jail before I could process fully exhaust grievance filed an appeal directly to Jailer Osborne (Final Administrative Review[)]."

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than

8

raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

### III.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is "mandatory," *Jones v. Bock*, 549 U.S. 199, 211 (2007), and applies to all actions brought with respect to prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 517 (2002). "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available . . . even when the state cannot grant the particular relief requested . . . and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted).

To exhaust a claim, a prisoner must proceed through all of the steps of a prison's or jail's grievance process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative

9

"agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87.

While not addressed by Defendant in her summary-judgment motion nor raised by Plaintiff in his response, the Court must first address the provisions in the DCDC grievance policy dealing with sexual abuse. The procedures states, "13. Grievance Procedures may be utilized to report / address incidents of sexual abuse. . . . b. Inmates are not required to use the Grievance process or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse." The procedures also states, "15. Although a grievance may be used to report an incident of sexual abuse/assault, inmates are not required to use the Grievance Process for reports of this nature . . . ." The Inmate Handbook section titled Grievance Procedure Rights contain no similar provisions concerning alleged incidents of sexual abuse.

Assuming that the DCDC grievance policy, and not the Inmate Handbook, is the controlling policy, the Court finds that the provisions dealing with sexual abuse do not negate the mandatory requirement under the PLRA to exhaust the "available" administrative remedies before filing a federal action. In analyzing whether administrative remedies are "available," the Sixth Circuit has concluded that "[s]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)). In *Owens*, the Sixth Circuit found that "[a]lthough a remedy must be

'available' in order for a prisoner to be required to pursue it to exhaust his claim, . . . this does not mean that the prison must require the prisoner to exhaust his remedies for the remedy to be 'available.'" *Id.* at 770 n.4. "Generally, the prisoner would be free to choose not to exhaust his remedies; he would only be required to do so if he wants to file a complaint regarding the matter in federal court." *Id.*; *see also Benjamin v. Ward Cnty.*, No. 4:12-cv-028, 2015 U.S. Dist. LEXIS 33581, at *45-46 (D.N.D. Mar. 18, 2015) (finding that steps in grievance process which were permissive rather than mandatory do not excuse the mandatory exhaustion obligation under § 1997e(a)) (citing *Johnson v. Thyng*, 369 F. App'x 144, 147-48 (1st Cir. 2010) (per curiam); *Owens*, 461 F.3d at 770 n.4; *Davis v. Warman*, 49 F. App'x 365, 367-68 (3d Cir. 2002); *Warren v. Fort Dodge Corr. Facility*, No. 08-CV-3038, 2009 U.S. Dist. LEXIS 44568, at *7-8 (N.D. Iowa May 27, 2009); *Braimah v. Shelton*, No. 4:03CV3135, 2005 U.S. Dist. LEXIS 49501, at *9 (D. Neb. May 20, 2005)).

Therefore, the Court finds that while the DCDC grievance policy did not require that Plaintiff file a grievance concerning a claim of sexual abuse, the grievance procedures were "available" to Plaintiff, and he was therefore required to exhaust the grievance procedures before filing this action. Moreover, Plaintiff did in fact avail himself of the grievance procedures.

However, Defendant argues in her motion that Plaintiff failed to properly exhaust because he did not pursue the grievance process to its conclusion as required by the policy. The DCDC grievance procedures provide, "In cases where the inmate is not satisfied with the initial response to the grievance, the inmate may appeal his/her grievance to the jailer. This appeal must occur within 48 hours of receipt by the inmate of the initial response." Defendant argues that Plaintiff never appealed the denial of his grievance to the Jailer. Plaintiff does not dispute that he failed to appeal the denial. In his response, he states, "I was transfered to Hickman

County Jail before I could process fully exhaust grievance filed an appeal directly to Jailer Osborne (Final Administrative Review[])]." However, an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield*, 199 F.3d at 309. "Generally, '[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion.'" *Napier*, 636 F.3d at 223 (citing *Blakey v. Beckstrom*, No. 06-163-HRW, 2007 U.S. Dist. LEXIS 5181, at *4 (E.D. Ky. Jan. 24, 2007)). "This Court adheres to the general rule that a prisoner's subsequent transfer to another prison facility does not relieve him of his obligation to administratively exhaust his claims at the facility where the claims arose." *Bruin v. Meko*, No. 14-CV-57-HRW, 2015 U.S. Dist. LEXIS 29759, at *14 (E.D. Ky. Mar. 10, 2015) (citing *Mora v. Rios*, No. 7:11-CV-68-KKC, 2012 U.S. Dist. LEXIS 14025, at *9 (E.D. Ky. Feb. 6, 2012); *Wiley v. Boone Cnty. Sheriff's Office*, No. 2:09-CV-98-WOB, 2009 U.S. Dist. LEXIS 69532, at *10-11 (E.D. Ky. Aug. 4, 2009)). Plaintiff cites no reason that his transfer made the grievance procedures at DCDC unavailable to him. Therefore, the Court concludes that Defendant has established that she is entitled to summary judgment on the exhaustion issue.

Defendant also cites an additional reason that Plaintiff failed to properly exhaust. Defendant argues that Plaintiff did not make any reference in his grievance to any alleged sexual contact between Plaintiff and Defendant. Further, according to Billings' affidavit, in response to Plaintiff's grievance, Billings had a conversation with Plaintiff concerning the May 19, 2014, incident, and Plaintiff did not allege that any sexual contact occurred. Moreover, according to Billings' affidavit, he and Blincoe interviewed Plaintiff in response to his grievance and at no time during the interview did Plaintiff state that he had been touched in any inappropriate way, sexually or otherwise, by Defendant. In his response to the summary-judgment motion, Plaintiff

does not dispute that he did not disclose the alleged sexual misconduct by Defendant in his grievance or interview with Billings and Blincoe. He states that he did not disclose it because he was nervous and his attorney was not present.

Upon review of Plaintiff's grievance, Plaintiff does not in fact make any reference to any sexual contact by Defendant whatsoever. His grievance essentially alleges that Defendant violated his privacy and embarrassed him by remaining present in the medical examination room while he was undressed; that she later singled him out in front of other inmates; and that he has a "personal conflict" with her. DCDC personnel took action on the grievance by interviewing Plaintiff and preparing a Sexual Offense Allegation Reporting Form. The report indicates, and Plaintiff does not dispute, that when asked whether Defendant did or said anything inappropriate, Plaintiff responded, "No." While Plaintiff states that the reason he did not disclose the sexual abuse is that his attorney was not present, Plaintiff states no authority, and the Court cannot discern any, for an inmate being allowed to have an attorney present during an interview concerning a grievance for which the inmate is not accused of any wrong-doing.

While a prisoner must follow a jail's own procedures to properly exhaust, *Woodford*, 548 U.S. at 93, the PLRA's exhaustion requirement "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524-25. The Supreme Court has held that "[r]equiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. at 205. Other "benefits of exhaustion" include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219

13

(citing *Woodford*, 548 U.S. at 88-91; *Porter*, 534 U.S. at 524-25). "Proper exhaustion serves the necessary interest of providing 'fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'" *LaFountain v. Martin*, 334 F. 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)). "A grievance must provide notice of the problem at hand . . . ." *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 U.S. Dist. LEXIS 621, at *15 (E.D. Ky. Jan. 3, 2011) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)); *see also Ward v. Luckey*, No. 12-CV-14875, 2013 U.S. Dist. LEXIS 147077, at *5 (E.D. Mich. Oct. 11, 2013).

Plaintiff filed a grievance which completely failed to indicate the nature of the misconduct alleged in this action–that Defendant sexually abused him–and subsequently when interviewed by jail personnel again failed to identify the nature of the misconduct alleged in this action. Consequently, DCDC personnel were unable to resolve Plaintiff's allegations meaningfully before being subjected to this action or to otherwise meet the purposes of the exhaustion requirement. The Court finds that Plaintiff failed to properly exhaust his allegation of sexual abuse by failing to include any allegation of sexual abuse in his grievance or subsequent interview about his allegations. Therefore, Defendant has established that she is entitled to summary judgment on the exhaustion issue for this reason, as well.

For the foregoing reasons, the Court concludes that Plaintiff has not established the existence of a disputed material factual element to defeat summary judgment. Because Plaintiff did not exhaust his available administrative remedies, this action is barred by the PLRA's exhaustion requirement.

## IV.

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment by Defendant (DN 25) is **GRANTED**. **IT IS FURTHER ORDERED** that the motion for summary by Plaintiff (DN 33) is **DENIED as moot**.

A separate Judgment will be entered.

Date:   September 11, 2015

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Counsel of record
4414.010